# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JEDDO COAL CO.,** | : | Civil. No. 3:16-CV-621 |
| | : | |
| Plaintiff | : | (Judge Mariani) |
| | : | |
| v. | : | (Magistrate Judge Carlson) |
| | : | |
| **RIO TINTO PROCUREMENT** | : | |
| **(SINGAPORE) PTD LTD., et al.,** | : | |
| | : | |
| Defendants | : | |

## MEMORANDUM OPINION

### I.  Factual Background

The case comes before us for resolution of two motions for protective order filed by the Defendant, Rio Tinto, (Doc. 96), and a third-party intervenor, Reading Anthracite Coal. (Doc. 95.)  These motions, and this litigation, arise from Rio Tinto's alleged breach of their obligations to purchase coal from the plaintiff pursuant to a long-term supply agreement.  (Doc. 74.)  According to the plaintiff, Jeddo Coal Company, the parties' agreement obligated the defendant, Rio Tinto, to purchase coal from Jeddo in annual quantities and at defined prices.  The amended complaint filed by Jeddo alleges that Rio Tinto breached its purchase obligations in 2016, 2017, and 2018, and provides allegations regarding market prices of coal relevant to

calculating damages. (Id.) The complaint also alleges an entitlement to liquidated damages in accordance with the contract between the parties.

Rio Tinto contests these allegations, and further disputes Jeddo's entitlement to liquidated damages under their agreement. According to Rio Tinto, the liquidated damages provision in this contract, which called for a $30 per ton payment to Jeddo by Rio Tinto for goods not purchased, may be a legally unenforceable penalty clause. In addition to disputing the applicability of this liquidated damages provision, Rio Tinto contests any other measure of the damages allegedly suffered by Jeddo in this case.

With the issues framed in this fashion, as part of this litigation, the parties are embroiled in discovery disputes relating to contracts Rio Tinto had executed with other suppliers, Reading Anthracite Coal (RAC) and DTEK, at the time of the initial alleged breach of this agreement. At bottom, these disputes involve the parties' contrasting views regarding both the relevance and confidentiality of these other contract provisions. For their part, Rio Tinto and RAC object to the wholesale release of these contracts to Jeddo, arguing that the contracts have marginal relevance but contain confidential pricing and marketing information. According to Rio Tinto and RAC, release of this information to Jeddo, a competitor of RAC in the coal market, could place RAC at an unfair commercial disadvantage and justifies withholding this information. Given this view of the lack of relevance of these other

2

contracts, and the contention that disclosure of the agreements would prejudicially reveal confidential trade secret information, Rio Tinto and RAC posit a stark, binary choice for the court: either wholesale disclosure of the agreements to Jeddo or denial of any access to the agreements by the plaintiff's counsel. Having cast the court's choice in these terms, the movants urge us to deny any access to the agreements.

Not surprisingly, Jeddo sees this relevance-confidentiality equation in entirely different terms. Jeddo notes at the outset that the confidentiality concerns that are perceived by the movants the terms of these agreements may be situational, since Rio Tinto attached its agreements with Jeddo to its answer to the complaint in their entirety. (Docs. 34-1, 34-2.) Thus, Jeddo suggests that the agreements themselves have not always been deemed to have the degree of sensitivity that is now ascribed to these contracts. Jeddo further argues that much of the market pricing information in the agreements is presumably a matter of industry knowledge since the price of coal, while variable, is generally understood within the industry. Further, Jeddo asserts that volatility within the coal market means that disclosure of 2016 pricing data creates very little disadvantage to competitors in 2019. Jeddo also disputes the notion that it is actually a competitor of RAC or DTEK in this marketplace.

Beyond disputing the confidentiality of this contract information, Jeddo asserts that the information contained in these agreements is relevant, both to an evaluation of whether the liquidated damages provision in the Jeddo-Rio Tinto

3

contract was a commercially unreasonable penalty provision, and to calculation of market-price based damages. Jeddo also insists that these other contract provisions may rebut Rio Tinto's claim that the cost of coal from Jeddo was significantly higher than that of its competitors in 2016, the justification proffered by Rio Tinto as part of its defense in this case. Having struck the balance of confidentiality and relevance in this decidedly different fashion, Jeddo urges us to deny these motions for protective order and indicates that disclosure of the contracts should be made in accordance with the stipulation of confidentiality previously executed by the parties in this case. (Doc. 49-1.)

While the motions for protective order filed by Rio Tinto and RAC present us with a choice between complete disclosure and complete preclusion of this evidence in discovery, we note that the stipulation of confidentiality executed by the parties at an earlier stage in this litigation may provide us with a third path for the resolution of this dispute. That stipulation would, for example, permit CONFIDENTIAL: ATTORNEY'S EYES ONLY disclosure of information, a term which means that counsel, experts and witnesses could have access to this information, but Jeddo's principals could not review the documents. (Doc. 49-1 at 2-3.)

Presented with these motions, we instructed Rio Tinto and RAC to provide the pertinent contracts to us for *in camera* review. The movants have done so, (Doc. 98), and we have undertaken an *in camera* review of the 164 pages of coal contracts,

4

agreements and addenda provided to us. This review reveals that, while many of these documents appear to consist of boilerplate contractual terms with no apparent sensitive trade secret status, the agreements do contain price and marketing information which, while dated, may have some arguable sensitivity. Nonetheless it is also apparent from our *in camera* review that these agreements also have arguable relevance to the issues framed by Jeddo regarding the validity of its liquidated damages clause, the calculation of market-based damages, and the comparison of Jeddo's market pricing with other sellers in 2016.

Recognizing the relevance of this information, but mindful of its potential sensitivity, we reject the binary choice offered by the motions to compel. Instead, we will authorize the release of these contracts to plaintiff's counsel at this time as CONFIDENTIAL: ATTORNEY'S EYES ONLY material under the terms of the parties' confidentiality stipulation, subject to broader disclosure upon good cause shown.

## II. Discussion

As the parties have aptly observed, the resolution of this discovery dispute is guided by familiar legal principles. When presented with claims that discovery disclosures may reveal confidential trade secret information, it is well-settled that:

> [T]he Federal Rules of Civil Procedure expressly recognize that this type of trade information may be protected from disclosure and specifically authorize courts to enter orders "requiring that a trade secret or other confidential research, development, or commercial

5

information not be revealed...." Fed.R.Civ.P. 26(c)(1)(G).The paradigm for assessing requests for compelled disclosure of trade secret information involves a straightforward assessment of the competing interests of the parties. In this setting:

> The courts have developed a balancing test for discovery of information that one party claims would result in undue harassment, oppression, or embarrassment. This test requires the trial judge to weigh the interests of both parties in deciding whether or not to protect the information. A three pronged test has developed in regards to trade secrets. For a protective order to be granted, a party must show that the information is confidential and that the disclosure would be harmful. The burden then shifts to the party seeking disclosure to show that the information sought is relevant and necessary at this point in the litigation. Centurion Industries, Inc. v. Warren Steurer and Associates, 665 F.2d 323 (10th Cir.1981); Empire of Carolina v. Mackle, 108 F.R.D. 323 (S.D.Fla.1985).

Kaiser Aluminum & Chemical Corp. v. Phosphate Engineering and Const. Co., Inc., 153 F.R.D. 686, 688 (M.D.Fla.1994). See also Mannington Mills, Inc. v. Armstrong World Indus., Inc., 206 F.R.D. 525, 528 (D.Del.2002).

RyCon Specialty Foods, Inc. v. Wellshire Farms, Inc., No. 1:09-CV-2092, 2011 WL 1342998, at *7 (M.D. Pa. Apr. 7, 2011), report and recommendation adopted, No. 1:09-CV-2092, 2011 WL 1988016 (M.D. Pa. May 23, 2011). We have also pointed out for the parties in the past the burdens of proof and persuasion that the law prescribes for those who seek to prevent the disclosure of otherwise relevant evidence on trade secret grounds. In this regard:

> Under Rule 26(c)(7), a protective order may issue to protect trade secrets or other confidential research, development, or commercial

information. Smith v. Bic Corp., 869 F.2d 194, 199 (3d Cir. 1989). The party seeking protection has the burden of showing that it is entitled to the protection sought. Gulf Oil Co. v. Bernard, 452 U.S. 89, 102 n.16, 101 S.Ct. 2193, 68 L.Ed.2d 693 (1981). Establishing that a particular document is a trade secret requires specific showings, and the party seeking to shield potentially responsive information from disclosure as a trade secret faces a high burden. Bimbo Bakeries USA, Inc. v. Botticella, 613 F.3d 102, 109-110 (3d Cir. 2010). "Good cause is established on a showing that disclosure will work a clearly defined and serious injury to the party seeking [to prevent] disclosure. The injury must be shown with specificity." Publicker Indus., Inc. v. Cohen, 733 F.2d 1059, 1071 (3d Cir. 1984). "Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning" will not establish good cause. Cipollone v. Liggett Group, Inc., 785 F.2d 1108, 1121 (3d Cir. 1986).

Jeddo Coal Co. v. Rio Tinto Procurement (Singapore) PTD Ltd., No. 3:16-CV-621, 2018 WL 1635153, at *3 (M.D. Pa. Apr. 5, 2018).

We note, however, that the court's discretion in this field also allows us to avoid in appropriate cases the stark choice between complete disclosure and total non-disclosure of disputed information. Instead, we may authorize disclosure pursuant to an attorneys' eyes only protective order. Such limited disclosure may be particularly appropriate where the information sought is relevant, but it is alleged that wholesale disclosure to a competitor would result in unfair harm. As one court has observed:

> "In general, courts utilize 'attorneys' eyes only' protective orders when especially sensitive information is at issue or the information is to be provided to a competitor." Westbrook v. Charlie Sciara & Son Produce Co., Inc., No. 07–2657, 2008 WL 839745, at *4 (W.D.Tenn. Mar.27, 2008) (citing cases). See also Arvco Container Corp. v. Weyerhaeuser Co., No. 1:08–CV–548, 2009 WL 311125, at *5 (W.D.Mich. Feb.9,

7

2009) ("To be sure, courts in many circumstances have found that a specific showing of competitive harm justifies a restriction of confidential or trade secret information to 'attorney's eyes only.' "). The party moving for the restrictive AEO designation must detail the alleged harm it is likely to suffer absent the requested protection "with a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements." Nemir v. Mitsubishi Motors, Corp*.,* 381 F.3d 540, 550 (6th Cir.2004) (quoting Gulf Oil Co. v. Bernard*,* 452 U.S. 89, 102 n. 16, 101 S.Ct. 2193, 68 L.Ed.2d 693 (1981)). In determining whether good cause exists for an AEO designation, courts must balance "the difficulties imposed upon plaintiff against the need to protect information from abuse by competitors." Arvco Container*,* 2009 WL 311125, at *6.

U.S. ex rel. Daugherty v. Bostwick Labs., No. 1:08-CV-354, 2013 WL 3270355, at *2 (S.D. Ohio June 26, 2013).

In the instant case, we choose this third path, an attorneys' eyes only disclosure consistent with the terms of the parties' stipulation of confidentiality. (Doc. 49-1.) We choose this path following our *in camera* review of these contracts, guided by the conclusion that many of these documents appear to contain contractual boilerplate language. As such, these provisions do not appear to be cloaked in any sensitive trade secret status. As for other pricing and marketing information described in the agreements, giving the movants the benefit of every reasonable doubt, we recognize that this information may cause some competitive harm. However, our review of these agreements also convinces us that the documents contain information relevant to the issues identified by Jeddo concerning the validity

of its liquidated damages clause, the calculation of market-based damages, and the comparison of Jeddo's market pricing with other sellers in 2016.

Presented with segments of these records, which may be both relevant to Jeddo's case and potentially prejudicial to the interests of Jeddo's competitors if disclosed in an unqualified fashion, we will follow the path taken by other courts and grant a limited confidential attorneys' eyes only protective order authorizing the release of this information to Jeddo's counsel consistent with the terms of the parties' prior confidentiality stipulation. Once this limited disclosure has occurred, the court and the parties can address in a more informed fashion whether further disclosure is necessary or appropriate. This course, in our view, strikes the proper balance between the needs of the plaintiff in this litigation, and the concerns voiced by Rio Tinto and RAC that competitive data not be directly shared with Jeddo's principals in an uncontrolled and untrammeled fashion.

An appropriate order follows.

## III. Order

For the reasons set forth above, IT IS HEREBY ORDERED THAT the motions for protective order filed by Rio Tinto and RAC, (Docs. 94 and 96) are GRANTED in part and DENIED in part as follows: The motions are GRANTED insofar as Rio Tinto shall disclose the documents submitted for *in camera* inspection, (Doc. 98), to counsel for Jeddo subject to CONFIDENTIAL: ATTORNEY'S EYES

9

ONLY provisions of the parties' stipulation of confidentiality. (Doc. 49-1, at 2-3.) Jeddo shall treat these materials CONFIDENTIAL: ATTORNEY'S EYES ONLY, but may, upon good cause shown, petition the court for broader disclosure of this information. In all other respects the motions for protective order are DENIED.

So ordered this 26th day of June 2019.

                        /s/ *Martin C. Carlson*
                        Martin C. Carlson
                        United States Magistrate Judge